We've got this technology handled. We'll go ahead and we'll call our first case, Duncan v. Governor of the Virgin Islands. Mr. DeRuzo. Good morning. Joseph DeRuzo on behalf of Jennifer Duncan. I'd like to reserve six minutes for rebuttal. In this case, the district court erred in denying Duncan's motion to certify the class when it concluded that Duncan's claims were not typical and that she would be an inadequate class representative. District court erred in two fundamental ways. First, it erred in failing to take into consideration that Duncan had rejected the GBI's partial payment. And two, the district court failed to take into consideration that Duncan had contested code section 6213 B2 cap A, the BIR's mathematical adjustment. Well, we're familiar with the case and so let's get to some questions right away, Mr. DeRuzo. Excuse me. Would it be possible for counsel, while he's arguing, to take the mask off? Yeah, that's okay with me. I think we, do we have that discretion? I'll ask the clerk. Yeah, go ahead, Mr. DeRuzo. That'll help us be able to hear you. Understood. My pleasure. Thanks. Believe me, I wish I were staying where you are doing the same. So did, was there ever actually a request for abatement filed? Yes, your honors. I believe the, there is no, there is no particular form, like a form for a tax refund, be it a form 1040, 1040X, or 843 for an abatement of a mathematical adjustment. And there's got to be something there. I might have the record wrong, but I thought that the record indicated there was some conversation, but there was never actually any formal request in writing that was tendered. Is that right? I believe that is incorrect. I believe my co-counsel, Mr. Golubiski, not only filed the joint appendix 25, the dispute of the mathematical adjustment, he was in direct communication with the Bureau of Internal Revenue and the counsel for Bureau of Internal Revenue. Yeah, but he was in communication. What I'm asking is, is there a document that I, because I could have missed it. Is there a document that said, you know, I'm counsel for so-and-so. This is a formal request for an abatement. I want this much money. Is there anything like that in the record, or is there just counsel's representation? I talked to them. It's my understanding. Well, I'll be very clear. I don't believe that we filed with the district court the request for the abatement, but I submit, Your Honors, that given that this case was an active litigation when the mathematical adjustment was tendered, that the dispute of the mathematical adjustment is sufficient given what we filed at Joint Appendix 25 and 26. And what did you file at Joint Appendix 25 and 26? Plaintiff's Notice of Dispute of Mathematical Adjustment, and then it attached the mathematical adjustment itself that's starting at page 27 and going on to 28, and indeed we referenced the appropriate code section that's 6212, I'm sorry, 6213, subsection B, and even put the government version on as I noticed that the, that by operation of that statute, it invalidates the mathematical adjustment, and the BAR had to issue a statutory notice of deficiency. Well, let's assume, just for the sake of discussion, we thought, yeah, you really didn't ask for this in a way that was significant or meaningful. Does that, does that mean you guys are out of court on the justiciability point? Do you still win anyway? I think we still win under the Supreme Court's Campbell-Ewald decision, given that it is clear that the GBI tendered partial payment, and that partial payment was rejected in full. Campbell didn't arise, of course, in Rule 23 context, and you don't think that that's meaningful? I don't think that it's meaningful. I believe the animating reasons in the Campbell decision was that an unaccepted or rejected settlement offer is viewed under contract principles, notwithstanding that case arose in a Rule 68 offered judgment context, and just like every other contract offer, the one that's rejected, it's annulled and he has no legal force. It's several, just so I want to make sure I follow your argument here. You say Campbell is about the offer to settle a claim because there was what you construe as an offer to settle a claim here, and that necessarily took it outside of district court's analysis of typicality and adequacy as a district court. So your authority for that is that line of, it's Campbell, and that's what it must mean, and therefore it's fine. I submit that Campbell and this court's project, Campbell, Lespina, and I think it's like Weisberg to talk about Campbell, but that is the error of law that a district court made, which then informed its Rule 23 analysis and operates as an abuse of discretion, because that's an error of law that was made. Is the fact that there was payment tendered here, there was a check given to make it different from Campbell, you all, where it was just that it was an offer of judgment but they didn't hand them a check, is that meaningful? I don't think it's meaningful, and my understanding of this court's Lespina case, if I'm pronouncing that correctly, is that footnote two talks about the rejected or the fully recognized as a matter of intellectual honesty. I'm not sure that footnote two is the holding of that case. It may be just an observation, maybe dicta, maybe an alternative holding, but I think that the logic from the court holds true here. Let's assume that's right. Why is Article 3, Prudential Considerations of Mootness, the standard for evaluating adequacy and typicality under Rule 23? Because I certainly see, I see the bridge that you're building, but I'm just trying to understand how you get there. Well, I would submit for all the reasons that mootness and picking off and all those doctrines had flexible nature for Article 3 considerations, that same logic should apply to Rule 23, because you're going to get preferred incentives. Why wouldn't a defendant offer a judgment, even a partial judgment or partial payment, in order to, although maybe not moot out a case for Article 3 considerations, to defeat class certification, which for many cases, in particular small value, negative value cases like this, would be the death knell of litigation. And then it would really, in particular in cases where you're looking at institutional systemic reform, that would be particularly problematic because then the institutional actor that's doing something bad across the board would have very perverse incentives in order to defeat class consideration and class certification. So if we got past just disability and we're looking at the Rule 23 factors, why doesn't shearing plow create a problem for you? In that case, there was the plaintiff brought ERISA claims, if I'm remembering correctly, and the court was concerned because there was a separation agreement that made things different for that plaintiff that might, the court thought, have created a distraction that took the plaintiff or could take a plaintiff's attention and efforts down a path that wasn't in line with the others in the class. You're in a posture where the government of the B.I. says, you know, we gave a refund, whether they chose to accept or not, we gave it to them. It wasn't as much as the plaintiff wanted, but now there's going to be a fight over that amount. In fact, they're already contesting the amount. That's a sideshow that's going to distract from the common issues. Are you, in short, are you in shearing plow territory where you're not typical? I would say no, because for a couple of reasons, as a matter of law, I believe the contesting of the mathematical adjustment means that my client's entitled to the full amount of her claim, and because the Virginia's government didn't issue a statutory notice of deficiency under 6212, and by operation of 6501, they are out of time for statute of limitations purposes. Isn't that whole discussion actually making the point that I think the other side is pressing, which is you've got your own fight with them, but it's not the class's fight. Your fight is in the weeds on these specific issues about when and how much they gave you, et cetera, when the common issues for the class are, are these people delaying payments, and therefore, your client's not typical. Well, I would submit, Your Honors, that even taking for a moment, given a concession that shearing plow does apply, that would only apply to count one of the first amended complaint. All the rest of my counts, which are under section 1983, ask for declaratory injunctive relief for the civil rights violation, that is, the government of Virginia, our employees cutting the line, skipping the line, and the fact that, just as in the United Circuit's Paese decision, the government of Virginia is using like Guam, these taxpayer funds as a form of bridge loans and not providing them within the six-month period, which the district court in Perkins recognizes being a more than reasonable time to process refund claims. So I think if, even if the court, if the court wanted to go that way, and I would advocate not to, I think the court easily could excise out count one, believe all the other counts, which are clearly for section 1983 relief, and say that instance, she's no different than any other person because her relationship vis-a-vis the government of Virginia's employees who are cutting the line, that's, that's everyone, that has nothing to do with how much she's owed. Understood, understood. Let me ask my colleagues, do you have something for the judge, Mady? Yeah, just, just one last question regarding the district court's analysis that your claims are not typical of corporate refunds that are an issue? Of the corporate refunds? I thought there were corporations that were included. 45 corporations? Yes, from my perspective, a taxpayer is a taxpayer is a taxpayer. If a taxpayer is a taxable entity, be it a person, be it a trust, be it a corporation, they file a tax return, a claim for refund, they don't get it in, in six months. It's just like every other taxpayer. So in that sense, taxpayers are treated... So your individual clients that leave, that leave plaintiff's claim for her individual refund is typical of the 40 plus corporations tax refunds that are part of it? Yes, and yes, because it's just a matter of, no one's getting their refunds within six months, and many of them have to wait, you know, years or decades. As an aside, I personally believe, and I have no evidentiary support for this, that the, the BIR pays individual taxpayers because they vote for corporations which, which don't vote. But again, you know, I would have to prove that up, but I think that my, the anecdotal evidence plays that out, at least in my opinion. Judge Roth, any questions? No, I have no questions. Thank you. All right, thanks, Mr. Drews. We'll hear you on the phone later. That's Mr. Clement. Good morning, Your Honors. Assistant Attorney General E.A. Clement on behalf of Capital East. Your Honors, I think this, the first thing that we have to do is decide this assumption that a settlement offer was made. No, no settlement offer was made in this particular case. What happened was the BIR sent out a batch of refunds, of which Ms. Duncan happened to be one of them. There was no intent here to settle the case. There was no unaccepted . . . Well, Mr. Clement, even before we get there, let me ask you a question I think is natural to that. The district court analyzed this as a matter of standing. Yes. Which got me wondering, because my, you would agree that standing and mootness are distinct doctrines, right? Yes, Your Honor. Okay. Isn't standing a doctrine that focuses on whether a justiciable claim at the beginning of a case, at the time a complaint is filed, and mootness asks whether something has happened since the filing of the case to then eliminate that justiciable controversy? Yes, Your Honor. You have to have standing to begin the case and mootness will, you know . . . And there's no . . . To maintain the case. Since the whole of the district court's analysis here about a lack of standing was based on the refund check being issued, since that occurred after the filing of the complaint, I'm right about that, aren't I? The timing? Yes. Okay. Then isn't standing the wrong lens and isn't mootness the right lens to be looking at this through? I mean, if you're going to be asking the justiciability question, where are you going to tell me that it's a distinction without a difference? I would say the latter, Your Honor, because she has to have an injury and she no longer has an injury. But she only needs it at the time that she files the class. I think that's Judge Jordan's point, right? If there's a live case of controversy, a live claim, at the time that she moves to the class certification, doesn't that satisfy Article III standing? But you have to maintain it throughout, so . . . That's mootness. Right. And that's . . . It's different because who's got the burden to show standing? The plaintiff. The plaintiff, yes. Who's got the burden to show mootness? The defendants. There you go. Right. So that's a distinction with a real difference. If we look at this not as a standing issue, but as a mootness issue, the burden is on the government of the Virgin Islands to demonstrate that justiciability has disappeared. That's not a light burden, according to our own case law. If we put that lens on it, explain to us how the fact that the government chooses to give some amount of money to the plaintiff deprives her of a real and significant claim against the government. Well, you have to go back to the class definition. And so the class is defined as all taxpayers, excluding judges, who have timely filed returns, have not received a timely notice, or disallowance of their claims, and have not received a refund. Right. She has received a refund. Well, she says, no, I haven't gotten a refund. Let's put it this way. Under that theory, could the government of the Virgin Islands send everybody a nickel and say, you got a refund? No, Your Honor. Why not? Well, because they have to process the returns in their order of possession. They process the returns and they say, here's a nickel. This is what we think you get. Well, you have to assume that the government is going to be acting in good faith. So if the government is acting in good faith and processing the returns and doing their calculations in good faith, their return, their refund is due, then that's what a particular taxpayer is due. But in this particular case, the government fulfilled this charter, the VR fulfilled this charter, and did an accurate calculation in good faith, and issued her a refund based on what it thought she was due. She doesn't think that's accurate. She claimed that amount. You gave her like a third of that amount or a little more than a third of that amount. It's not as if you guys were even close together. She asked for a refund. You gave her, I mean, $2,000 plus bucks is not nothing, but it's not the $7,000 plus she was looking for. Why is it the fact that you folks are thousands of dollars apart? I mean, do we attribute any good faith to the plaintiff and say, we just don't believe you, we believe them? Or is this the kind of thing where there's still a real concrete dispute over a tax refund? Well, there is a dispute, Your Honor, but it's an administrative dispute. And I think that you're, and I haven't read this case, but just basically on your description of the Sherman Cloud case, that's squarely where this is, is that now you have an administrative dispute over the amounts. So the class is basically all taxpayers, no matter what kind of entity you are, corporation, LLC, S corporation, individual who have received a refund and those who have not. There's no definition in the class for people who are disputing the amounts given. Now there's, since you've mentioned sharing plow, sharing plow itself says it's possible for a plaintiff to be atypical as to one claim, but typical as to other claims. And that's, you heard Mr. DeRuzo make that very argument, assuming the sharing plow knocked her out on claim one, she's still typical on all the others. What's wrong with that argument? Well, I mean, we don't accept that she's typical on all the claims, but if you're just going to take all three of them. Stick with the legal point, though. Right. Is it possible for somebody to be atypical on one thing, but typical on other claims like seeking a declaration that timely returns should be made? She may be typical on that, yes, your honor, but the complaint that's filed lacks a representative plaintiff regarding count one and there's no other plaintiffs. Well, now, now you're, let's, let's say adequacy of representation. Are you shifting to that or are you talking to fatality still? Well, I guess I'm shifting to part four because she can't adequately represent because she only, let's assume, even if you assume we don't, that she's typical for the counts, the other counts, she's not adequate because she's not typical for all counts. Well, adequacy of representation, the district court analyzed that by saying she didn't come forward with evidence of adequacy of representation. And in that respect, the district court did not abuse its discretion because they didn't present the evidence. Just the unsworn statements of counsel does not satisfy the standard. How do you, how do you prove a negative? How do you prove you're, you're not in it? How do you prove you don't have a conflict, right? Because the whole point of adequacy of representation is to show there's not some conflict between me and the class that would prevent me from aggressively and properly representing the class. If that's what you're called on to prove, yeah, how do you prove the negative? I don't have a conflict other than to say I don't have a conflict. Well, I mean, there has to be a way to do that, Your Honor. Otherwise, I mean, we should be automatic for every single class action. And in the NFL concussion, did you look to the complaint itself and to the motion for class certification to provide the evidence for adequacy of representation? I'm not, you know, I can't say I'm familiar. I mean, I know of that case. I haven't read it, but it seems like that would be a good place to start, Your Honor. Okay. And if, okay, good enough. Any questions? I have another question for you. There's a, this question about the putative class that I've got. It looked to me as if nobody was disputing the class characterization, that the fight was over just what we've talked about, typicality and adequacy. Yes, Your Honor. That's it. Did I read it right? Right. And because they had not satisfied all four factors of 23A, the court did not go to 23B. Got it. Okay. Judge, Judge Roth, do you have any questions for Mr. Finley? I have no questions. Thank you. All right. Anything further from you, sir? No, Your Honor. If you have no further questions, we'll rest on the brief. Okay. Thanks very much. Thank you. Judges, it should come as no surprise that my class definition, I think I lift it almost verbatim from the Paiesta case. You know, Paiesta has always been the model for me and my co-counsel to proceed with. So that's where the definition, that's where we got the definition. I think the problem with that, but I think in general, you know, this problem with the class definition, I think shows, or lack of problem from my perspective, shows that my client is an adequate representative of the class. And as evidence of that, obviously she was deposed. The government of the Virgin Islands had more than ample opportunity to drill down and ascertain what they considered to be a class conflict or inter-class conflict. They didn't do that. Well, but whose burden is it? Isn't it your burden to carry that to show I've met all the 23A factors and they, the district court said, you haven't pointed me to anything. And yeah, where do you point to anything? Your Honor, I point to the class action complaint, the motion is certified. Did you do that in your briefing? I'm pretty sure I did. I can't remember and I don't want to make a misrepresentation, but I do, I believe that the, I reviewed briefly my motion for class certification last night and I'm positive I did raise the adequacy of representation under A4. I'm positive I did that. And the one thing I would note that subsequent to the deposition of my client, I don't believe that the government of the Virgin Islands ever identified specific issues of, of a conflict that would make her inadequate as a class representative. Simply put, Your Honor, her claim is that the government of the Virgin Islands employees are cutting the line and that it's taken, that they're using it for a bridge loan that didn't pay them in six months. There is no, I can fathom no way that there is a interclass conflict. This is not like with subclasses where you have issues that, which I believe was, was the Sullivan or the Dewey case we're talking about, are subclasses and then the conflict between subclasses, in particular settlement classes. You have to remember that the, the, the relief that the First Amendment complaint is asking for is injunctive and declaratory. It is indivisible. It applies to all. So it applies to my client just as much as the next taxpayer. And so I can't see there being a class conflict, let alone a fundamental class conflict. Isn't, isn't this an issue that should have been explored by the district court, not by us? And should, didn't you have the responsibility to make sure that the issue was before the district court and that the district court dealt with it along the, the, the terms that you are saying you presented so that when it came to us on appeal, we have the full story in front of us, instead of what appears now to be not quite the full story. Judge Roth, let me push back on that a little bit. I do believe by operation of the pleadings, the filings, the motion practice, the depositions, that all of that issue was sufficiently teed up. And at some level, I would submit it has to fall on the, the party opposing the motion to identify the class conflict, which I can respond, as Judge Jordan acknowledged, I can't prove a negative, which is why I'm struggling to, to give you an answer of how I can prove that she, that there isn't a class conflict. All I can do is, is show that what the evidence shows by her deposition testimony and show that this case is, should be viewed substantially on all fours with how the Ninth Circuit and District Court of Guam viewed the Pieste case. So just as that case was, was, was certified under B2, I think this case should be sent back to the District Court for further findings by the District Court. I would say so, given that the parties engaged in discovery had ample opportunity for, for briefing. It's my reading of that recent Supreme Court case of Guerrero-Las Barrias, if I'm pronouncing it correctly, that when you have just like a, like a 12B6 is an issue of law here with the undisputed facts, you know, applying Rule 23 would also be an issue of law that this court can entertain in the first instance. All right. Thank you very much. We appreciate counsel providing argument this morning. We've got that under the case under advisement and we'll call our next case. Thank you very much.